UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )      CRIMINAL NO. 04-10348 MEL<br>)<br>MARIO RODRIGUEZ PERALTA  )<br>) | |

SENTENCING MEMORANDUM OF MARIO RODRIGUEZ PERALTA

    Mario Rodriguez Peralta respectfully submits this Memorandum in support of his request that the Court sentence him to time served. In part I below, he argues that two years is the applicable statutory maximum under 8 U.S.C. § 1326, because he was not charged with, nor did he plead guilty to, prior conviction of any felony. In part II, he objects to the probation office's calculation of his criminal history points and asks the Court to find that under U.S.S.G. § 4A1.3, his prior convictions substantially over-represent the seriousness of his criminal history. In part III, he addresses the reasons under 18 U.S.C. § 3553 (a) why the Court should impose the requested sentence.

    I. <u>Two years is the applicable statutory maximum under 8 U.S.C. § 1326.</u>[1]

        A. <u>The defendant was not indicted for, nor did he plead guilty to, being deported after having been convicted of a felony.</u>

    Mr. Rodriguez Peralta was charged with violating 8 U.S.C. § 1326 (a), "Illegal Re-entry of Deported Alien." The indictment alleges that he, "being an alien and having been excluded, deported and removed from the United States..." was found here, "in violation of Title 8, United

---

[1] The defendant is aware that the First Circuit Court of Appeals, as recently as September 14, 2005, has affirmed the holding in *Almendarez-Torres*, see *United States v. Rodriguez*, docket no. 05-1082, Order dated September 14, 2005. Nevertheless the defendant wishes to preserve his rights on this issue.

States Code, Sections 1326(a) and (b) (2) and Title 6, United States Code, Sections 202 (3) and (4) and Section 557." The indictment does not allege his prior conviction of any crime.

On July 5, 2005, the defendant pled guilty before this Court. At the hearing, the defendant did not admit to any fact pertaining to any prior criminal conviction.

> B. <u>This Court should find that the defendant cannot be sentenced under 18 U.S.C. §1326 (b) (2) and should sentence him under subsection (a) to no more than two years</u>.

> 1. <u>The Almendarez-Torres decision</u>.

8 U.S.C. § 1326 (a) states that an alien who is deported and reenters shall be imprisoned not more than two years. Section 1326 (b) (2) raises the statutory maximum to twenty years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." The statute does not set out the manner or standard of proof required to support the ten-fold increase in the statutory maximum, although the statute does require findings regarding the class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101(a) (43).

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant, having admitted in his guilty plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies," argued that the Fifth Amendment required the prior felony convictions to be charged in the indictment. *Id*. at 227. The Court, in a five to four decision, held that subsection (b) (2) is

> a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution require the Government to charge the factor that it mentions, an earlier conviction, in the indictment.


*Id*. at 226-227.

In his dissent, Justice Scalia wrote that "the text of the statute supports, if it does not indeed demand, the conclusion that subsection (b) (2) is a separate offense that includes the violation described in subsection (a) but adds the additional element of prior felony conviction." *Id*. at 250. He criticized the majority's ruling that it was constitutionally permissible for "a defendant's sentencing exposure to be increased tenfold on the basis of a fact that is not charged, tried to a jury, and found beyond a reasonable doubt." *Id*. at 260. He questioned why recidivism should be an exception to the rule that a fact which increases maximum permissible punishment must be found by a jury beyond a reasonable doubt: "[T]here is no rational basis for *making* recidivism an exception." *Id.* at 257-258 [emphasis in original]. He concluded that under the doctrine of constitutional avoidance, the Court should have construed section (b) (2) as defining a separate offense that must be charged and proven. *Id*. at 271.[2]

### 2. *Almendarez-Torres* is no longer good law.

Cases decided after *Almendarez-Torres* - *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), *Blakely v. Washington*, 125 S. Ct. 2531 (2004), *United States v. Booker*, 125 S. Ct. 738 (2005), and *Shepard v. United States*, 125 S. Ct. 1254 (2005) - establish that the Sixth Amendment requires factors that increase statutory maximums to be charged and either proved beyond a reasonable doubt to a fact-finder or admitted as part of a guilty plea. Although the Court has continued to mechanically cite the irrational "exception" to

---

[2] "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

this rule carved out by *Almendarez-Torres*, according to which prior convictions are the only facts increasing statutory maximums that do not need to be charged and proved, a majority of the Court believes that *Almendarez-Torres* was wrongly decided. Under the reasoning of these cases, *Almendarez-Torres* is no longer good law. This Court should utilize the doctrine of constitutional doubt to find that the statute under which the defendant is charged sets out a separate crime in subsection (b) (2). Therefore, since the defendant was not charged, and did not plead guilty to, the predicate conviction, he cannot be sentenced under that section.[3]

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." While affirming the questionable holding of *Almendarez-Torres,* the Court tightly limited that case to its facts, noting that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]." 530 U.S. at 484, 487. The Court emphasized that no question regarding jury trial or standard of proof arose in *Almendarez-Torres* and explicitly noted that *Almendarez-Torres* may have been incorrectly decided and should be narrowly applied. *Id*. at 488-489. The Court's lack of confidence in

---

[3]The Supreme Court stated long ago the "one [rule of] universal application, - that every single ingredient of the offence must be accurately and clearly expressed; or, in other words, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *United States v. Reese*, 92 U.S. 214, 232 (1875) (Clifford, J., concurring). This long-standing precedent, solid law before *Almendarez-Torres*, and upheld in case law since *Almendarez-Torres*, indicates that *Almendarez-Torres* is an invalid deviation from the common law and constitutional requirement that all the ingredients necessary for punishment be alleged in an indictment. As the defendant was not indicted for having a specific conviction under 8 U.S.C. § 1326 (b) (2), he cannot now be punished for it.

*Almendarez-Torres* was undoubtedly reinforced by the defection of Justice Thomas, who authored a concurring opinion renouncing his swing vote in *Almendarez-Torres*. *Apprendi*, at 520-21 (Thomas, J., concurring).

In *Ring*, the Court addressed the inconsistency between *Apprendi* and *Walton v. Arizona*, 497 U.S. 639 (1990), in which the Court had upheld fact finding by a judge concerning sentencing factors predicate to a death sentence. The Court found that evolving constitutional litigation undermined *Walton*, and overruled that case. The Court specifically quoted Justice Thomas's concurring opinion in *Apprendi*, in which he asserted *Almendarez-Torres* was wrongly decided:

> [I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact [,] ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravating crime.

*Ring,* 536 U.S. at 605 (quoting *Apprendi*, 530 U.S. at 501 (Thomas, J., concurring)). In reversing *Walton*, the Court stated: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S. at 494 n.19..., the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

In *Blakely* and *Booker*, the Court held that increases in mandatory guidelines punishment implicated Sixth Amendment rights, but nevertheless quoted *Apprendi* in excluding "the fact of a prior conviction" from its holding that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be found by a jury beyond a reasonable doubt or admitted to at a guilty plea. *Blakely*, 124 S. Ct. 2536; *Booker*, 125 S. Ct. at 747. By the time of the *Shepard* decision, however, five months after *Booker*, Justice Thomas openly questioned why the Court

adhered to the rule of *Almendarez-Torres*, "which draws an exception to the *Apprendi* line of cases for judicial fact finding that concerns a defendant's prior convictions." *Shepard*, 125 S. Ct. at 1264. Concurring, Justice Thomas stated that *Almendarez-Torres*

> has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided [citation omitted]. The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres*, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements."

Id. at 1264, quoting *Harris v. United States*, 536 U.S. 545, 581-582 (2002) (Thomas, J., dissenting).

In short, the "breadth of the holdings" in the recent cases cited "have in fact overruled" *Almendarez-Torres*. Cf. *United States v. Malouf*, 2005 WL 1398624 (D.Mass.) (*Booker* and *Blakely* have in fact overruled *Harris*). This Court should find that 8 U.S.C. § 1326 (2) (b) sets out a separate crime that was neither charged nor admitted to by the defendant. Therefore Mr. Rodriguez Peralta can only be sentenced, under subsection (a), to a maximum of two years.

3. <u>Even if *Almendarez-Torres* survives, it does not apply to this case</u>.

The Court in *Almendarez-Torres* addressed only the indictment clause of the Fifth Amendment. The defendant admitted during the plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies." *Almendarez-Torres*, 523 U.S. at 227. The Court there expressly disavowed any holding regarding the manner and standard of proof required to establish the prior aggravated felony. <u>Id</u>. at 248. Here, Mr. Rodriguez Peralta did not plead guilty to having the predicate conviction under subsection (2) (b). Accordingly,

even assuming the continuing vitality of *Almendarez-Torres* as a statement of Fifth Amendment law, sentencing him to more than two years violates his Sixth Amendment rights under *Apprendi*, *Blakely*, and *Booker*.

Moreover, the current version of 8 U.S.C. § 1326 differs from that addressed in *Almendarez-Torres*. The statute at issue in *Almendarez-Torres* was simpler: former section 1326 included no reference to removal and created two simple categories of aliens "whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony)" and "whose deportation was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(1) and (2) (1988). In addition, the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43) was less complex than at the time of the *Almendarez-Torres* decision. In 1988, the initial definition included only murder, drug trafficking, and weapons trafficking. Pub. L. No. 100-690, § 7342, 102 Stat. 4469, 4469-70. In 1990, the definition expanded to include crimes of violence for which a term of at least five years imprisonment was imposed. Immigration Act of 1990, Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048. In 1996, after Mr. Almendarez-Torres's guilty plea, the definition was expanded to cover dozens of potential offenses depending on various characteristics of the offense. 8 U.S.C. § 1101(a) (43) (2000). [4]

To increase the statutory maximum, 8 U.S.C. § 1326 now requires findings regarding the

---

[4] Some of the offenses involve factors that would not be included in either a judgment or charging documents, such as the amount of loss (8 U.S.C. § 1101(a)(43)(D) and (M)), the purpose of assisting a family member (8 U.S.C. § 1101 (a)(43)(N) and (P)), and factors classifying crimes as "crimes of violence" and drug trafficking crimes. See James P. Fleissner and James S. Shapiro, Sentencing Illegal Aliens Convicted of Reentry After Deportation: A Proposal for Simplified and Principled Sentencing, 8 SENT. RPTR. 243 (March/April 1996) (the tortuous amendment process has increased the complexity of determining what is an "aggravated felony").

class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101 (a) (43). However, the statute does not explicitly set out the manner or standard of proof for the increase in the statutory maximum. Compliance with the mandate of *Apprendi* and its progeny require that those facts - facts beyond the mere fact of prior conviction - be proved beyond a reasonable doubt or admitted by the defendant. That has not been done here.

In sum, *Almendarez-Torres* does not apply here because unlike that case, Mr. Rodriguez Peralta did not admit as part of his plea that he had the necessary conviction to raise the statutory maximum to twenty years. Under the present statute, the proof concerning the prior conviction is complex and the Court cannot assume the facts necessary to that finding. Not having waived his Sixth Amendment rights to proof of the conviction, Mr. Rodriguez Peralta cannot now be punished under the twenty year maximum.

> II. <u>The Probation Office has miscalculated the defendant's criminal history points, and in addition, this Court should find that under U.S.S.G. § 4A1.3, the defendant's prior convictions substantially over-represent the seriousness of his criminal history</u>.

The Probation Office has credited Mr. Rodriguez Peralta with twelve criminal history points, placing him in criminal history category V. First, the defendant should not be given two points for being under a criminal justice sentence at the time of the instant offense, pursuant to U.S.S.G. § 4A1.1 (d). The government knew who Mr. Rodriguez Peralta was and that he was amenable to prosecution for illegal reentry at the time of his arrest on March 31, 2000 on drug charges in state court. The fact that the government waited almost four years to indict Mr. Rodriguez Peralta, until after he was under a criminal justice sentence, should not result in his receiving a higher sentence for this crime.

Second, the probation office has credited Mr. Rodriguez Peralta with three points for a 1998 state case in which he was convicted of Distribution of a Class C Substance, and another three points for the 2000 state case in which he was convicted of Distribution of Class B.  These cases were consolidated for sentencing, as he was sentenced for these cases on the same day, in the same court, before the same judge, with the sentences running concurrently.  Therefore under U.S.S.G. § 4A1.2, application note 3, the sentences are considered related because they were consolidated, and he should only receive one three-point credit for these cases.

Finally, the probation office has credited Mr. Rodriguez Peralta with one point for a conviction for possession of marijuana, for which he received a continuance without a finding, and two points for two occasions on which he was convicted with motor vehicle offenses for which he received a fine.   The defendant contends that under U.S.S.G. § 4A1.3, these prior convictions overstate the seriousness of his criminal history.

The probation office concludes that Mr. Rodriguez Peralta has twelve criminal history points.  The defendant would subtract two from that number for committing the offense while under a criminal justice sentence, and three for the consolidated drug cases, which gives him seven criminal history points, placing him in Criminal History Category IV.  Then, in consideration of the argument that the score still overstates the seriousness of his record, the defendant asks the Court to calculate his guideline range from Criminal History Category III.

### III.  <u>18 U.S.C. § 3553 (a) considerations</u>.

#### A.  <u>Nature of the offense  (§ 3553 (a) (1))</u>.

Mr. Rodriguez Peralta's criminal conduct was non-violent.

B. History and characteristics of Mr. Rodriguez Peralta.
   (18 U.S.C. §§ 3553 (a) (1) and 3661).

Mr. Rodriguez Peralta is from a very poor background and has had limited education. The drug charges on his record are the result of his working for drug dealers to support his own habit. He came back to the United States because of his family here. It appears to counsel that when he returned to the United States after being deported, he did not understand his criminal liability for illegal reentry.

C. The need "to protect the public from further crimes of the defendant" (§ 3553 (a) (2) ©.

If this Court allows Mr. Rodriguez Peralta to return to the Dominican Republic, he will not repeat his mistake of illegally returning to the United States. He now understands the seriousness of this crime and the draconian penalties he faces for returning. Since his children are older than when he was deported before, he believes that they will be able to visit him in the Dominican Republic. He has family in the Dominican Republic and informs counsel that he will not have a problem supporting himself.

D. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (§ 3553 (a) (2) (A)).

The requested sentence satisfies the above concerns. Mr. Rodriguez Peralta was arrested on March 31, 2000, for a state case on which he was sentenced to five to six years. He finished that sentence and was paroled to ICE on November 1, 2004. He was taken into custody by the Marshals on November 24, 2004.

Mr. Rodriguez Peralta served the sentence on his state case at the Plymouth County Correctional Facility, so, essentially, he has been incarcerated at that institution for four and one

half years. He has been held as a federal inmate there for eleven months. It is well-known that federal inmates at Plymouth serve "hard time" there: the inmates do not go outside for recreation; there are no contact visits with family; visits are of extremely limited duration; there are no educational opportunities; federal inmates may not work; there are no drug programs; and the medical unit is notoriously bad.

If Mr. Rodriguez Peralta is sentenced to additional time, his conditions of confinement will be harsher because of his status as an illegal alien. He will be housed in a higher security facility than he might be if he were a citizen, and he will not be eligible for a half-way house program at the end of his sentence. Finally, after serving his sentence, he will undoubtedly spend additional months in ICE custody awaiting deportation.

Mr. Rodriguez Peralta asks this Court to consider that the government here waited for him to serve out a sentence of five to six years in state custody before indicting him at the ninth hour for illegal reentry. Although Mr. Rodriguez Peralta's status as an illegal alien subject to prosecution for reentry was known to the government at the time he was arrested for his state sentence, he was not indicted until November 23, 2004, four years later, and a month after he had completed his state sentence and was released from state custody. While this may not rise to a case of delay that would qualify for a downward departure under the Guidelines, see United States v. Saldana, 109 F. 3d 100, 104 (1st Cir. 1997) (downward departure may be warranted for extreme case of delay in prosecution that prevents defendant from serving concurrent time); United States v. Martinez, 77 F.3d 332, 336 (9th Cir. 1996) (downward departure under U.S.S.G. § 5K2.0 proper to avoid prejudice defendant faces as a result of a delay in indictment), the defendant asks the Court to consider this factor under 18 U.S.C. § 3553(a) as it pertains to

whether the defendant has been made to suffer enough for the charged crime.

Finally, the length of Mr. Rodriguez Peralta's incarceration is affected by another happenstance, which is that he returned to a district that does not have a so-called fast track alternative. In many districts, a defendant facing an illegal reentry prosecution may plead to lesser charges that cap the defendant's jail term. The District of Arizona, the Central District of California and the Western District of Washington all have fast track programs, for instance, that provide for a defendant with a prior aggravated felony to have his prison term capped at either 24 or 30 months.[5] Because the District of Massachusetts does not have such a program, these sentence reductions are not available to Mr. Rodriguez Peralta.

In sum, because Mr. Rodriguez Peralta has served "hard time" for eleven months at Plymouth, because the government waited nearly four years to indict him while he served a state sentence, and because he does not have the benefit of a fast-track program, eleven months is a fair sentence in this case and satisfies the criteria set out in 18 U.S.C. § 3553.

IV. Conclusion

For the reasons set out in part I, above, Mr. Rodriguez Peralta asks this Court to find that the maximum sentence he can receive is two years. For the reasons set out in part II, he asks the Court to calculate his guideline range from Criminal History Category III. In part III, he asks the Court to sentence him to eleven months in light of the factors set out in 18 U.S.C.§ 3553.

---

[5] Counsel's information about fast track programs comes from the sharing of information among Federal Defender Offices: it is based on the reports of the Federal Defender Offices in the mentioned judicial districts.

<table>
<tr><td>Date: October 21, 2005</td><td>MARIO RODRIGUEZ PERALTA<br>By his attorney,<br>/s/ Page Kelley<br>Page Kelley<br>  B.B.O. #548237<br>Federal Defender Office<br>408 Atlantic Avenue, 3rd Floor<br>Boston, MA  02110<br>Tel: 617-223-8061</td></tr>
</table>